UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERALD O.[1]

    **Plaintiff,**

    v.

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

Case No.  3:20-cv-0308
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the current applications of Plaintiff Jerald O. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 11, *Defendant's Memorandum in Opposition*, ECF No.13, *Plaintiff's Reply*, ECF No. 14, and the *Certified Administrative Record*, ECF No. 10. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors,* reverses the Commissioner's decision, and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

**I.    PROCEDURAL HISTORY**

In December 2014, Plaintiff filed his current applications for benefits, alleging that he has been disabled since July 1, 2010,[3] as a result of both physical and mental impairments. R. 260-69.[4] Those applications were denied by the Commissioner, and that denial was reversed by this Court. *O[.] v. Commissioner*, 3:18-cv-0163 (S.D. Ohio June 28, 2019). On remand, Administrative Law Judge ("ALJ") Gregory G. Kenyon held a second hearing on February 27, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. R. 1134-56. In a decision dated April 10, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 1, 2010, through the date of that decision. R. 1110-24. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

**II.   LEGAL STANDARD**

   **A.    Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

---

[3] Plaintiff filed a previous application for disability insurance benefits ("DIB"), which was denied on January 23, 2013. R. 1114. Because that determination had become final, the ALJ concluded that the earliest eligibility date for DIB was January 24, 2013. R. 1113.
[4] References to pages in the Certified Administrative Record will be cited, using the pagination in the Certified Administrative Record, as "R. __."

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step

five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

4

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 40 years old on his alleged disability onset date. R. 1122. He last met the insured status requirements for DIB on December 31, 2015. R. 1113. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date and the date of the decision. R.1124.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: mild lumbosacral degenerative disc disease, residuals of a left knee contusion, chronic obstructive pulmonary disease, and a bipolar disorder. R. 1114.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform light work with the following additional limitations:

> No more than occasional crouching, crawling, kneeling, stooping, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. No work around hazards such as unprotected heights or dangerous machinery. No driving of automotive equipment. No concentrated exposure to respiratory irritants or temperature extremes. The claimant is limited to performing simple and repetitive tasks, with a standard vocational preparation level of 1 or 2. No more than occasional interaction with supervisors and co-workers; no contact with the general public. No teamwork or tandem tasks. No jobs involving strict production quotas. No more than occasional changes in the job duties or the work routine from one day to the next.

R. 1117.

The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a bulk mail deliverer and pinsetter. R. 1122.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a sorter, packer, and housekeeping cleaner—existed in the national economy and could be performed by Plaintiff. R. 1123. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from his alleged disability onset date through the date of the decision. R. 1124.

Plaintiff disagrees with the ALJ's findings at step four, specifically contending that the ALJ failed to comply with the Court's order of remand by failing to properly evaluate the medical opinions relating to his mental impairment. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Statement of Errors,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 13.

IV. **RELEVANT EVIDENCE**

Although the ALJ found that Plaintiff suffers from both physical and mental impairments, R. 1114, it is only the ALJ's evaluation of opinion evidence relating to Plaintiff's mental impairment that Plaintiff addresses. The Court will therefore limit its discussion to that issue.

Plaintiff has been treated for anxiety and depression since at least 2012. *See, e.g.*, R. 412 (prescription for medication by primary care physician), 415 (diagnoses of anxiety and

depression), 449 (diagnosis of depression), 466 (diagnosis of anxiety), 680 (diagnoses of anxiety and depression).

In March 2015, Mary Ann Jones, Ph.D., consultatively evaluated Plaintiff at the request of the state agency. R. 388-94. Plaintiff reported a history of depression since childhood, R. 388, and complained of anxiety, depression, anger and irritability, mood swings, memory and concentration problems, paranoia, panic symptoms, social withdrawal, and difficulty coping with stress, conditions for which he was hospitalized in 2010. R. 390. He has been fired from jobs because of his "bad attitude." *Id.* On clinical examination, Plaintiff was cooperative, his demeanor was defeated, resigned, and dysphoric, and his affect was sad. R. 391. He reported becoming upset and anxious anytime his routine is interrupted. *Id.* He was oriented and his contact with reality was fair. Dr. Jones diagnosed bipolar disorder (depression), and placed Plaintiff's GAF at 53.[5] R. 393. In assessing Plaintiff's ability to engage in work-related activities, Dr. Jones opined that Plaintiff could "understand, remember, and carry out instructions in a work setting consistent with his intellectual functioning range," which was borderline; his psychological condition "negatively impacts his ability to consistently sustain appropriate concentration and attention and to maintain appropriate persistence and pace to perform various work tasks;" he would have "limitations in his ability to interact with coworkers and supervisors in an emotionally stable and predictable manner;" and "he does appear to have some limitations in his ability to tolerate the stress associated with normal employment." R. 393-94.

---

[5] **Error! Main Document Only.**The [Global Assessment of Functioning] GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas.

*Norris v. Comm'r of Soc. Sec.*, 461 Fed. Appx 433 n.1 (6th Cir. 2012).

In March 2015, Ellen Rozenfeld, Psy.D., reviewed the record for the state agency and opined that Plaintiff "retains the ability to perform simple repetitive tasks on a sustained basis in a work setting with routine work place changes. He can handle incidental public contact, can work in proximity with coworkers but not on joint or shared tasks and can handle occasional supervisory contact." R. 94.

Miriam Hoefflin, Ph.D., first treated Plaintiff in April 2015. R. 396. In May of that year, Dr. Hoefflin reported to the state agency that Plaintiff was oriented, had no delusional or bizarre thoughts or hallucinations, and made acceptable eye contact. R. 397. *See also* R. 1442-44 (duplicate). He "appears to have difficulty with persistence and also low frustration tolerance." *Id*. He was withdrawn and his interactions with others outside his immediate family were very restricted. *Id*. The doctor attributed Plaintiff's inability to work to his "severe back pain." *Id*. In assessing Plaintiff's ability to tolerate stress, Dr. Hoefflin reported that Plaintiff "has excessive anxiety and depressive affect. He is very easily offended and becomes combative. He does not handle either routine daily stressors or work place stressors successfully." R. 398.

In June 2015, Deryck Richardson, Ph.D., reviewed the record on reconsideration for the state agency and opined that Plaintiff "retains the ability to perform simple repetitive tasks on a sustained basis in a work setting with routine work place changes as long as strict production standards are not in place. He can handle incidental public contact, can work in proximity with coworkers but not on joint or shard tasks and can handle occasional supervisory contact." R. 129.

In May 2016, Dr. Hoefflin completed a mental impairment questionnaire in which she indicated that Plaintiff had participated in outpatient psychotherapy sessions two to four times per month since April 2015 in connection with a diagnosis of major depressive disorder, recurrent, for which medication was prescribed by Plaintiff's primary care physician. R. 714-15.

8

*See also* R. 1436-40 (duplicate). She placed his current GAF at 50. R. 714. The signs and symptoms of Plaintiff's impairment included personality change, mood disturbances, emotional lability, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, generalized persistent anxiety, and hostility and irritability. *Id*. Findings on clinical examination included "severe depression, expresses feelings of hopelessness, & cries during some sessions. He has pervasive overwhelming anxiety. He is irritable, constantly 'on edge' & defensive. He sometimes displays explosive anxiety which frightens him. He is socially withdrawn." R. 715. Plaintiff's prognosis was characterized as "[p]oor because of patient's lower back pain which is chronic degenerative disc disease." *Id*. According to Dr. Hoefflin, Plaintiff's impairments or treatment would cause him to be absent from work more than three times per month. R. 716. Plaintiff had "extreme" limitations in his ability to maintain attention and concentration for extended periods; perform activities within a schedule and maintain regular attendance and be punctual within customary tolerances; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R 716-17. Plaintiff had "marked" impairments in his ability to maintain social functioning; concentrate, persist, or pace; episodes of deterioration or decompensation in work; ability to understand, remember, and carry out detailed instructions; sustain an ordinary routine without special supervision; work in coordination with proximity to others; make simple work-related decisions; interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. *Id.* He had "moderate" limitations in his activities of daily living; ability to remember locations

and work-like procedures; understand, remember, and carry out very short and simple instructions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. *Id*.

Dr. Hoefflin's handwritten treatment records, which are largely illegible, R. 1060-1106, reflect a diagnosis of "bipolar" of "moderate" severity. R. 1060. *See also* R. 1565-1646 (treatment records from April 2015 to September 2018).

In August and November 2016, Plaintiff underwent psychological evaluation sessions overseen by Michelle Vaughan, Ph.D. R. 1051-59. *See also* R. 1445-53 (duplicate). On the WAIS-IV, Plaintiff's full scale IQ score of 83 placed him in the low average range of intellectual functioning. R. 1055. On the Wechsler Memory Scale IV, Plaintiff placed in the low average range of functioning in most areas, but "he likely struggles to attend to and retrieve auditory information." R. 1057. Scores on the Beck Depression Inventory-II and the Beck Anxiety Inventory fell within the severe range. *Id.* Testing suggested "some difficulty with inattentiveness or the ability to sustain his attention…." R. 1058. Plaintiff was diagnosed with major depressive disorder, moderate, recurrent episode, with "anxious distress." *Id.* Outpatient therapy was recommended. R. 1059.

In its order of remand, this Court concluded that the ALJ had erred in his evaluation of Dr. Hoefflin's opinions, but also directed "the ALJ to consider [Plaintiff's] remaining arguments on remand." *Id*. *O*[.] *v. Commissioner*, 3:18-cv-0163, *Report and Recommendation*, ECF No. 19, (S.D. Ohio June 13, 2019), PageID# 1208.

Relevant medical evidence admitted into the record following remand includes treatment notes from Plaintiff's primary care provider Martin J. Schear, M.D. R. 1299-1435. Diagnoses by Dr. Schear included bipolar I disorder, mixed, unspecified, and anxiety. R. 1300, 1304.

In May 2017, Dr. Hoefflin completed a basic medical statement to the Ohio Department of Job and Family Services in which she indicated that Plaintiff suffers from

> [s]evere depression, expresses feelings of hopelessness and cries during some sessions. He has pervasive, overwhelming anxiety. He is irritable, constantly 'on edge' and defensive. He sometimes displays explosive anxiety which frightens him. He is socially withdrawn. His emotions change abruptly at times from feeling 'happy' and positive to being angry and depressed.

R. 1457. According to Dr. Hoefflin, Plaintiff is "unemployable" and his functional limitations were expected to last six months or more. *Id.*

In January 2020, Plaintiff began treatment with John K. Lodge, Psy.D., following the death of Dr. Hoefflin. R. 1877-78. *See also* R. 1146. Plaintiff reported feeling depressed, agitated, irritable, short tempered, emotionally labile, anxious, and manic on a variable basis. R. 1878. On initial assessment, Dr. Lodge noted that Plaintiff was cooperative but agitated; his affect was appropriate and his mood was anxious. R. 1879. His speech was normal and his thought process and content were intact. *Id.* There was no evidence of hallucinations or delusions. Dr. Lodge's preliminary diagnoses were cyclothymic disorder with anxious distress and somatic symptom disorder with predominant pain. *Id.* At his next office visit, Plaintiff reported feeling tired but "relatively okay," R. 1876. Dr. Lodge noted "an anxious, agitated, and subdued level of affect, with a somewhat pressured and withdrawn (but generally cooperative) style of discourse." *Id.* In February 2020, Plaintiff reported feeling "good" despite a recent diagnosis of cancer. R. 1875. On clinical examination, plaintiff exhibited "a mildly anxious and

subdued, but generally euthymic level of affect, with a somewhat pressured and rambling style of discourse." *Id*.

At the most recent administrative hearing, Plaintiff testified that he still has difficulty interacting with people and controlling his anger. R. 1139. "My attitude's been getting worse." R. 1140. He typically leaves his home every other day to go to the grocery store and doctors' appointments. *Id*. He has difficulty concentrating "a couple times a week…." R. 1141. He has crying spells three or four times per week. R. 1143.

**V. DISCUSSION**

Plaintiff contends that the ALJ failed to adequately weigh the mental health opinions, including those of Dr. Hoefflin and of the state agency consultants, and failed to abide by this Court's remand order. *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1945. This Court agrees.

In his first decision, the ALJ assigned "[l]imited weight" to the opinion of Dr. Jones, the state agency consultative examiner:

> Dr. Jones diagnosed a bipolar disorder and she characterized the claimant as having a "bad attitude" that would negatively affect his ability to get along with others and cope with job stress. However, . . . the claimant has full contact with reality and is able to conform his conduct to socially acceptable standards when he chooses to do so. . . . Dr. Jones' comment that the claimant's overall psychological condition would negatively affect his ability to maintain attention, concentration, persistence, and pace is vague and does not provide information specific enough to be of any real use. Further, Dr. Jones appears to base a great portion of her conclusions on the claimant's subjective complaints. For example, she reported that the claimant was cooperative and set forth no indications of anger with normal posture, facial expressions, and general body movements. Despite the lack of difficulty interacting, Dr. Jones stated that, based on his reports of past problems, there appeared to be limitations in the claimant's ability to interact with coworkers and supervisors.

R. 27 (citations to record omitted).

The ALJ assigned "[l]ittle weight" to Dr. Hoefflin's opinions in the first decision:

> Dr. Hoefflin may be considered a treating source because she is a master's level licensed psychologist, but the treatment notes she supplied are almost entirely illegible. However, as noted above, those portions of Dr. Hoefflin's records which are legible consist of the claimant's subjective reports of stress and how he is feeling without observations of any clinical findings noted. Dr. Hoefflin indicated that the claimant could not maintain sufficient concentration and that he has an explosive temper. However, examination records confirm that the claimant retains the ability to concentrate sufficiently to perform unskilled work tasks within the limitations set forth above. Additionally, Dr. Hoefflin's statement that the claimant has an explosive temper is based only on his subjective statements as there is not evidence from any source, including Dr. Hoefflin, reporting the observation of this temper or aggressive behavior. The claimant's temper is well within his control, despite his subjective protestations to the contrary. Further, the record provides no basis for Dr. Hoefflin's speculative statement that the claimant would miss four days of work per month. Dr. Hoefflin provided no explanation for that conclusion and, given the minimal treatment and clinical findings of record, that opinion is sheer speculation and entitled to no weight. Dr. Hoefflin's assessment indicates marked deficits in several areas, but her treatment notes, as well as the consultative examination reports, are not consistent with that level of severity. Accordingly, Dr. Hoefflin's opinions are entitled to some weight concerning her opinion that the claimant experiences some deficits in concentration and attention, as well as some difficulty interacting with others, which are taken into account above. However, her opinions are otherwise entitled to minimal to no weight to the extent they purport to establish greater functional limitations than set forth above, or a condition of disability with the meaning of the Social Security Act.

R. 27-28 (citations to record omitted). The ALJ assigned "[m]oderate weight" to the opinion of

Dr. Vaughan, the other consultative examiner:

> Dr. Vaughan diagnosed major depression and WAIS-IV testing showed low average intellect. She indicated that the claimant would have difficulty retaining instructions, but his working memory score was within the low average range and is consistent with the limitations to simple tasks and few changes in work setting or routine. Dr. Vaughan reported that the claimant's ability to work was limited by deficits in attention and concentration, and difficulty controlling his temper. However, as set forth above, his level of day-to-day functioning, as well as his performance during mental status examinations and testing are consistent with sufficient intellect and attention/concentration to perform unskilled, simple, repetitive tasks. . . . Dr. Vaughan's opinion is entitled to moderate weight to the extent it is consistent with the above-described residual functional capacity.

R. 28 (citations to record omitted). The ALJ made no reference, in his first decision, to the

opinions of the state agency reviewing psychologists.

13

In his second decision, the ALJ evaluated opinions regarding Plaintiff's mental impairments, as follows:

> In her opinions, Dr. Hoefflin found that the claimant has primarily marked or extreme limits in his ability to function, and would be expected to be absent from work multiple times each month, because of his medically determinable severe mental impairments. Despite these apparently extreme levels of dysfunctionality, Dr. Hoefflin opined that the claimant would be capable of managing any benefits that were awarded to him. This shows an internal inconsistency in Dr. Hoefflin's opinions, as an individual with the extreme levels of dysfunction she cited would be unlikely to be able to handle his own affairs and financial resources. In addition, as noted above, the claimant has not required psychiatric hospitalization in decades, and does not appear to have either homicidal or suicidal ideation. Despite the claimant's interpersonal social difficulties, this basic level of functionality observed by more recent treatment providers is inconsistent with the extreme level of limitation implied by Dr. Hoefflin's opinions. Given these inconsistencies, both internal to and external from Dr. Hoefflin's provided documents, the undersigned continues to give little weight to her opinions, despite her status as a treatment provider for the claimant. Similarly, the undersigned declines to ascribe different weight to the opinions of Michelle Vaughan, Ph.D., given following a psychological evaluation, and to the opinions of Ellen Rozenfeld, Psy.D., and Deryck Richardson, Ph.D., given on behalf of DDD at the initial and reconsideration levels, respectively.
>
> \*\*\*
>
> The mental functional capacity restrictions recommended by Dr. Hoefflin have been re-evaluated pursuant to the District Court's order, but have not been given any increased weight in crafting the residual functional capacity restrictions noted above, as they appear extreme and inconsistent both with the balance of the record and with the undersigned's personal observations of the claimant and his testimony during the hearing.

R. 1121 (citations to record omitted). The ALJ provided no express re-evaluation of the opinion of Dr. Jones, the state agency consultative examiner, nor did he expressly evaluate, in either his first or second decision, the opinions of the state agency reviewing psychologists.

The ALJ's evaluation of the opinion evidence of record is wholly insufficient. The articulated basis for discounting Dr. Hoefflin's opinion—*i.e.*, that "an individual with the extreme levels of dysfunction she cited would be unlikely to be able to handle his own affairs

14

and financial resources," R. 1121—is based on only the ALJ's own speculation. Moreover, the ALJ failed to evaluate, following remand, the opinions of Dr. Jones, the state agency's consultative examiner, and he failed to evaluate, in either decision, the opinions of the state agency reviewing psychologists. Under these circumstances, the decision of the Commissioner must be reversed and the matter must be remanded to the Commissioner.

Plaintiff asks that the matter be remanded with directions for the granting of benefits. *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1956; *Plaintiff's Reply*, ECF 14, PageID# 1977-78. The Court disagrees. It is true that the ALJ failed to properly evaluate medical source opinions. However, where, as here, there exists conflicting evidence relevant to the proper resolution of Plaintiff's claims, the matter must be remanded for further proceedings by the Commissioner, whose duty it is to resolve such conflicts. *Faucher v. Sec'y of Health and Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).[6]

## VI.  CONCLUSION

For these reasons, the Court **GRANTS** *Plaintiff's Statement of Errors,* ECF No. 11, **REVERSES** the Commissioner's decision, and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  October 7, 2022                                     *s/Norah McCann King*
                                                                             NORAH McCANN KING
                                                                   UNITED STATES MAGISTRATE JUDGE

---

[6] However, the Court suggests that, on remand, the Commissioner assign the matter to a different ALJ.